IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

GARLAND MURRAY,

       Plaintiffs,

v.                                                    Case No. 2:13-cv-15798

RUSSELL MATHENY, JONATHAN FRAME,
CURTIS DIXON, GARY HINTE, CAPTAIN CAUDILL,
DAVID BALLARD, JIM RUBENSTEIN, SANDRA MAY[1],
JASON COLLINS, SGT. YOUNG, COUNSELOR HYPES,
CORPORAL DONALDSON, MR. DICKERSON, JOSH WARD,
JOHN DOE #1, and JOHN DOE #2,
each in their individual and official capacities,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for initial screening under 28 U.S.C. § 1915A, and submission of proposed findings and a recommendation for disposition, pursuant 28 U.S.C. § 636(b)(1)(B). The plaintiff's Application to Proceed Without Prepayment of Fees (ECF No. 1) was granted and he has now paid the full filing fee. This matter is proceeding on the plaintiff's Amended Complaint (ECF No. 34), which was filed, with leave of court, on March 20, 2014.

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a

---

[1] This defendant is also sometimes named in the plaintiff's Amended Complaint as "Sandra Maines" and sometimes she is listed as an "RN" (Registered Nurse) and sometimes as a "PA" (Physicians' Assistant).

governmental entity.   On review, the court must dismiss the complaint, or claims therein, if such claims are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant who is immune from such relief.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *  In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[1]

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's Amended Complaint is convoluted, disjointed and somewhat difficult to comprehend. It does not contain specific numbered paragraphs or counts addressing a single set of circumstances in accordance with Rule 10 of the Federal Rules of Civil Procedure.[2] Nevertheless, the undersigned has conducted a thorough review of the Amended Complaint and additional documentation filed by the plaintiff.

The plaintiff's Amended Complaint appears to raise claims against the following defendants, all of whom are or were employed by the West Virginia Division of Corrections ("WVDOC") at the Mount Olive Correctional Complex ("MOCC"): Captain Russell Matheny; Associate Warden of Operations Jonathan Frame; Curtis Dixon[3]; Gary Hinte; Captain Caudill; Associate Warden of Programs Jason Collins; Sgt. Young; Counselor Hypes; Corporal Donaldson; Josh Ward; and a Mr. Dickerson. The plaintiff's Amended Complaint also appears to raise claims against David Ballard, the Warden at MOCC; Jim Rubenstein, the Commissioner of the WVDOC; and Sandra May, who is

---

[1] Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A. Accordingly, the undersigned will apply this standard when reviewing the plaintiff's claims for relief.

[2] After the plaintiff filed his initial Complaint (ECF No. 2), the plaintiff repeatedly filed additional documents and made several attempts to file amendments to his Complaint in piecemeal, which included individual "complaints" addressed to particular defendants. A status conference was held, after which the plaintiff was granted leave to file one integrated Amended Complaint. It appears that, for the most part, the plaintiff took his individual "complaints" and filed them together as one document. Accordingly, the undersigned has tried to consolidate and summarize the types of claims brought by the plaintiff and to identify the defendants against whom each type of claim is being brought. The undersigned further notes that some of the pages of the Amended Complaint appear to be missing or contain text that ends abruptly.

[3] This defendant is listed in the style of the plaintiff's Amended Complaint; however, the undersigned has not located a single specific allegation in the body of the Amended Complaint that addresses conduct by this defendant. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state any plausible claim against defendant Curtis Dixon, and that he should be dismissed as a defendant herein.

believed to be employed by Wexford Health Sources, Inc., the contracted medical provider at MOCC.

Construing the Amended Complaint liberally, as this court must, it appears to raise claims that fall into the following categories: denial of the plaintiff's right to be free from cruel and unusual punishment and deliberate indifference to his medical needs under the Eighth Amendment; denial of the plaintiff's rights to due process and equal protection under the Fourteenth Amendment; denial of the plaintiff's right to visitation and his right to be free from retaliation; and denial of the plaintiff's rights under the Fourth Amendment.

In particular, the plaintiff's Eighth Amendment claims stem from allegations that he was stabbed on the recreation yard by racist inmates after he had requested that he be placed on single recreation and allegations that he has been denied proper medical treatment.   The plaintiff's due process claims are based upon allegations that the plaintiff has been denied fair hearings concerning his placement in and retention on Administrative Segregation and his proper advancement through the Quality of Life Program.   The plaintiff further alleges that he has been subjected to retaliation in the form of being denied visitation with certain visitors, and that he has been generally subjected to racial discrimination.   Finally, the plaintiff alleges that a search of his cell and destruction of his legal property violated his rights under the Fourth Amendment.

The plaintiff has also raised claims against defendants Ballard, Rubenstein, Matheny and Caudill, claiming that, as supervisors, they knew of the violation of the plaintiff's rights and failed to take any corrective action.   The Amended Complaint further appears to assert that these supervisory defendants created policies which disregarded or encouraged illegal acts and that these defendants showed gross

4

negligence in management.  The undersigned will address each category of claims in turn.

## ANALYSIS

### A.     The plaintiff's official capacity claims.

The plaintiff's Amended Complaint states that he is suing each of the defendants in both their individual and official capacities.  However, an exhaustive review of the Amended Complaint indicates that the only specific request for relief made by the plaintiff against these various defendants is monetary damages.[4]

To the extent that the plaintiff has brought claims against these defendants in their official capacities, any claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States

---

[4]   The undersigned does not read the Amended Complaint to specifically seek any prospective injunctive relief.  The plaintiff, however, filed a separate Motion for Hearing on Temporary Restraining Order and Preliminary Injunction (ECF No. 35) which will be independently addressed.

Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). The Eleventh Amendment, however, permits a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Id.* at 337. Thus, the undersigned proposes that the presiding District Judge **FIND** that all of the defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment and, accordingly, such claims must be dismissed.

> **B.    The plaintiff's individual capacity claims.**

The undersigned will now address each of the plaintiff's claims against the defendants in their individual capacities.

> **1.    Eighth Amendment - failure to protect claims**

From the minimal specific factual allegations pled in the Amended Complaint, it appears that the plaintiff was stabbed on the recreation yard of the Quilliams segregation units at MOCC on or about April 1, 2013, and that he required outside medical treatment at "Charleston Trauma Center Hospital," after which he was returned to MOCC. The plaintiff's Amended Complaint alleges that, prior to the stabbing, the plaintiff put grievances and requests into Captain Russell Matheny "to remove [him] from recreation with racist inmates" and Matheny failed to do so. The Amended Complaint further states:

I stated I feared for my life rec-ing with racist inmates.  Still no action was taken.  Per Policy 325 & others, its [sic; it's] (required) if requested by any inmate to be placed on single rec for protection, out of harm it should be followed without delay or meetings.  Instead he denied me to go to single rec.  He didn't brief other C/O's on my request.  He simply denied it, went on vacation, my grievances was set aside, my requests was ignored.  By this Captain over MOCC facility['s] judgment not to place me on single rec as requested feared for my life, by his failure to protect me equally (I'm) suing him individually and in official capacities on every relief demanded, Qualified immunitys [sic; immunities] under P.L.R.A. (1-15) demanded entitled with the total amount of the relief of $50,000.

Due to his unprofessional dutys [sic; duties] of top rank officer putting me in danger after the fact of knowing the possibilitys [sic; possibilities] of my danger.  Also by his unprofessional acts of favoritism with inmates, acknowledged the basis of my request, grievances to inmates, the initiation to these racist inmates the following actions took place cause [sic; because] of Captain Matheny.  I got stabbed in my neck, I got stabbed in my right lung that collapse[d] one of my lungs unabling [sic; making it unable for] me to breath[e] and taken to Charleston Trauma Center Hospital.

(ECF No. 34 at 3-4).  The plaintiff's Amended Complaint also states:

Matheny also told other C/O's & inmates about my complaints of racism.  After I got stabbed I was told not to complain to (unit team) again.  He set me up for attack to no [sic; know?] of issue & didn't separate rec groups or denie [sic; deny] single rec – (see record – everything shows proof).

(*Id.* at 4).

The plaintiff further appears to allege that defendants Frame (the Associate Warden of Security) and Dickerson (an institutional investigator) are aware of the identities of racist inmates, but continue to place the plaintiff in danger by refusing to separate him and putting him on recreation with racist inmates.  (*Id.* at 9, 10).  The Amended Complaint further alleges that Captain Caudill, on two different occasions, took the plaintiff off of single recreation (however, it does not specify when this occurred), and placed the plaintiff on a racist pod "with known racism actions." (*Id.* at 15).  The Amended Complaint further alleges that defendant Caudill gave inaccurate

responses on grievances, and told other inmates that the plaintiff had written grievances on them, which led to threats against the plaintiff, and then took him off single recreation.  (*Id.*)

The plaintiff's Amended Complaint further alleges that two John Doe defendants, who are alleged to be correctional officers who were working in the tower on April 1, 2013, had video screens of the recreation yard and either watched this stabbing occur, and did nothing, or were not paying attention and, thus, violated policy and failed in their duties.  (*Id.* at 23-24).  The Amended Complaint further alleges that the plaintiff asked Counselor Hypes to keep him away from inmates who had threatened him and Hypes, nonetheless, put him in a racist pod.  (*Id.* at 25-26).

Finally, the plaintiff's Amended Complaint further alleges that Corporal Donaldson, and other John Doe Officer(s) who were working on the recreation yard on April 1, 2013, failed to search the plaintiff when he entered the recreation yard and, presumably, failed to search the other inmates who were on the recreation yard at that time, which permitted the plaintiff's stabbing.  The Amended Complaint further states:

> But by him [Corporal Donaldson] not searching inmates who attack[ed] me he failed to protect me, violating rules of procedures and my safety. (Inmate names undisclosed) was able to bring to recreation a [sic; an] (8) inch knife of metal to stab me.  Due to the fatal stab wounds, fact the stabs was meant to kill . . . .
>
> * * *
>
> Due to his unprofessional dutys [sic; duties] of top rank officer of (not) searching inmates (by) facts the inmates are drawn to stab people he put my life in danger.  I could of [sic; have] died.  Due to his unprofessional acts of not watching the rec yard, not searching inmates by Policy, he is solely responsible of [sic; for] the attack that put me in Charleston Trauma Center for (4 days).  If he would of [sic; have] searched inmates this stabbing would of [sic; have] never happen[ed].

(*Id.* at 27-28).

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.,* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.,* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*, at 837.

Deliberate indifference on the part of prison officials to a specific known risk of harm states a claim under the Eighth Amendment to the United States Constitution, *see Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987); however, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 847. The negligent failure to protect inmates from violence will not suffice. *Pressly*, 816 F.2d at 979. The undersigned **FINDS** that the allegations in the plaintiff's Amended Complaint

concerning the alleged failure to protect him from a serious risk of harm warrant a response from defendants Matheny, Frame, Dickerson, Caudill, Hypes and Donaldson.[5] Accordingly, by separate Order, the undersigned will order service of process on these defendants.

2.    <u>Eighth Amendment - failure to provide medical treatment claims</u>

The plaintiff's Amended Complaint also contains a number of allegations concerning the failure to provide him proper medical treatment.  He specifically names Sandra May (whom the undersigned believes to be a Physicians' Assistant employed by Wexford Health Sources, Inc., the contracted medical provider at MOCC) as a defendant, but also refers to other John Doe Nurses in the body of the Amended Complaint.  (ECF No. 34 at 21-22).

The Amended Complaint alleges that, when he returned from the hospital, Sandra May and other unnamed nurses never gave him the medication that had been prescribed to him, wouldn't give him bandages, and denied him treatment for a lump/infection in his neck.  (*Id.* at 21-22).  The Amended Complaint further alleges that Sandra May refused to change the plaintiff's diet and told him that he had to eat foods to which he is allergic.  (*Id.*)  The Amended Complaint further alleges that the plaintiff was being denied an inhaler for breathing problems, following having a collapsed lung.  (*Id.*)

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "To establish that a health care provider's actions constitute deliberate indifference to a

---

[5]  The plaintiff has not yet identified the John Doe officers; thus, the court cannot serve process on them at this time.

serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852. Because Sandra May is an employee of the contracted medical provider for the West Virginia Division of Corrections, a state agency, the deliberate indifference standard is applicable to her conduct. *West v. Atkins*, 487 U.S. 42 (1998).

The undersigned **FINDS** that the plaintiff's allegations in his Amended Complaint concerning the denial of medical treatment warrant a response from defendant Sandra May.[6]  Accordingly, by separate Order, the undersigned will order service of process on defendant May.

3.    <u>Fourteenth Amendment – due process claims</u>

The plaintiff's due process claims appear to be grounded in his placement and retention in administrative segregation at MOCC and the failure of the defendants to

---

[6] Again, because he plaintiff has not yet identified the other nurses and the court cannot serve process on John Doe defendants.

properly advance him through the Quality of Life Program ("QOL Program"), which is a behavior-driven progressive incentive system consisting of five levels which must be completed by inmates on Administrative Segregation.  Inmates qualify for advancement to the next level by successfully completing required behavioral and educational programs, and demonstrating good behavior.

The plaintiff's Amended Complaint indicates that he was placed in segregation after he participated in three-way telephone calls and provided false telephone contact information in violation of prison rules.  According to the Amended Complaint, the plaintiff has been held on segregation for more than two years.  (ECF No. 34 at 6-7).

The Amended Complaint specifically alleges that defendants Frame, Dickerson and Collins, as members of the PRO Committee, denied the plaintiff his right to progress to Level 4 of the QOL program "due to a simpel [sic; simple] negative entry that was secretly put onto my log (By Defendant) [not identified] a week before receiving Level #4[.]"  (ECF No. 34 at 6).  The Amended Complaint also appears to allege that the plaintiff was forced to re-start the QOL program as a result of this negative entry.  (*Id.*)  Thus, the plaintiff asserts that he was denied privileges and was "basically punish[ed] for receiving a write-up that [he] never received."  (*Id.*)  The plaintiff's Amended Complaint further alleges that, "even knowing all the racist groups on QOL, all the separation keep aways [I] have on QOL due to being African American, I'm forced to do another 2 years."  (*Id.* at 7).  The Amended Complaint further states:

> Even after fully explaining my letter, information regarding threats, explaining negative log done out of retaliation, (I'm still forced to go threw [sic; through] (1) mental anguish, (2) humiliation, (3) possibilitys [sic; possibilities] of danger, (4) embarrassment & torture, (5) not being able to see my dieing [sic; dying] mother, (6) denied education, rights to law library (amongst other violations of law rights)

(*Id.*)

Concerning defendant Collins, the plaintiff's Amended Complaint specifically alleges that, as the Associate Warden of Programs, Collins has denied him "access to education, programming that is meaningful, law library privileges and help gaining & receiving education and [his] GED . . . . " (ECF No. 34 at 8).  The plaintiff further claims that he is "suffer[ing] by being held on this program" and that he is "not gaining anything."  (*Id.*)  Concerning defendant Frame, the Associate Warden of Security, the plaintiff claims that "Mr. Frame knew of my incident with getting stab[bed], instead of processing me [through], he restarts me, putting me onto unit with racist inmates . . . . He deliberately restart[ed] me on segregation to humiliate, torture me.  Denial of Due Process (see exhibits) in which he violates my rights by policy not following Mt. Olive rules, procedures."  (*Id.* at 9).  Thus, the undersigned reads the plaintiff's Amended Complaint to allege a violation of the plaintiff's right to due process under the Fourteenth Amendment based upon his placement and retention on Administrative Segregation and in the QOL Program.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law."  However, as a result of his conviction and imprisonment, a prisoner's protected liberty interests are significantly reduced.  As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers."  515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).  In the prison context, a liberty interest is created by the imposition of an

13

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit reiterated that, "[i]n order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action.  The *Beverati* Court found that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given <u>no</u> educational or religious services, had failed to meet the *Sandin* standard.  Thus, the Court held that neither the fact that an inmate was placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmate vis a vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause.  *Id.* at 502-504.  The Court further stated:

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.
>
> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest.  And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

*Id.* at 504.

Following the reasoning of the Supreme Court in *Sandin*, the undersigned finds no liberty interest implicated in the decisions of prison staff which caused the plaintiff to be placed in administrative segregation, and it is not atypical for inmates to be placed in administrative segregation for any number of reasons. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d at 502-04 ("confinement to administrative segregation does not implicate a liberty interest"). The plaintiff had no right to notice and an opportunity to be heard prior to his re-assignment to administrative segregation, as a prisoner has no liberty interest in being housed in any particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976).

While, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court ruled that the "totality of circumstances" to which inmates were subjected in the Ohio "super maximum" prison (prohibition of almost all human contact including cell-to-cell conversation, 24 hour a day lighting, one hour exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) could be atypical and significant hardships which could implicate a liberty interest and its attendant due process requirements, this court has repeatedly found that the conditions of confinement in segregation at MOCC, including the QOL Program, do not rise to that level.

The holdings in *Sandin*, *Beverati* and *Wilkinson* establish that the plaintiff has failed to state a facially plausible due process claim in violation of the Fourteenth Amendment. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's

Complaint fails to state a claim upon which relief can be granted with regard to the allegations in his Amended Complaint concerning alleged due process violations.

### 4.   The plaintiff's claims regarding visitation and retaliation

The plaintiff's Amended Complaint further alleges that several defendants have "teamed up" against him to get him in trouble and to deny him visitation with close friends and family.  Specifically, the plaintiff's Amended Complaint alleges that a Sgt. Young has basically "denied every visitor that has sent me visitor form." (ECF No. 34 at 25).  The plaintiff claims that defendant Young denied such visitation based upon inaccurate or fraudulent information, including invalid NCIC reports.  (*Id.*)[7]  The plaintiff states that his proposed visitors include the mothers of his children; that that none of the proposed visitors has ever been incarcerated; and that they have followed all rules and policies.  (*Id.*)  The Amended Complaint further alleges that "not giving chance for visitation is cruel and unusual punishments." (*Id.*)

The plaintiff's Amended Complaint further alleges that defendant Gary Hinte, an institutional investigator, "teamed up" with Sgt. Young to deny the plaintiff all his visitors.  The Amended Complaint further states that "He is causing a lot of retaliation, causing denial of visitation on inaccurate information." (*Id.* at 11).  The plaintiff further alleges that Hinte made vague claims that the plaintiff was affiliated with gangs in order to keep the plaintiff on segregation.  (*Id.*)[8]  The Amended Complaint further alleges that

---

[7]   The Amended Complaint also alleges that the plaintiff is being denied visitation "based solely on prior defendants of lawsuit."   However, the plaintiff does not specify whether he means this lawsuit, or some other lawsuit, or the identity of such defendants.  The undersigned is unaware of any other civil lawsuits filed by the plaintiff in this court that involve any of the named defendants.  The plaintiff recently had a habeas corpus matter that was dismissed by the presiding District Judge for failure to prosecute (Case No. 2:13-cv-33493) and a civil suit filed against two defendants that is unrelated to his incarceration (Case No. 2:13-cv-17383) which was dismissed for lack of subject matter jurisdiction by the Honorable John T. Copenhaver, Jr., United States District Judge.

defendant Hinte "wrote [the plaintiff] up for someone else.  It shows he deliberately went abusn [sic; abusing] authority to harass me & visitors to humiliate & make me suffer.  That's cruel & unusual."  (*Id.* at 11).  The plaintiff also alleges that defendant Hinte appeared at the plaintiff's Administrative Segregation hearing when he was not supposed to be there.  (*Id.* at 12).

The Amended Complaint further alleges that defendant Josh Ward "forced [the plaintiff] to break the rules of MOCC.  If he would have did [sic; done] his job, told me accurate information (I) would of [sic; have] never falsely submitted anyone as family on my phone list." (ECF No. 34 at 29).  The plaintiff alleges that, as a new inmate, Ward told him that he could not add anyone to his call list, unless they were family, but then he never put any of the plaintiff's numbers on his list.  (*Id.*)  Thus, the plaintiff appears to allege that, if Ward had not done those things, the plaintiff would not have made three-way phone calls in order to call friends and would not have been charged with a rules violation and been put in segregation.  (*Id.*)  The plaintiff describes Ward's conduct as "unprofessional" and states that it "caused [the plaintiff] to get into all my actions." (*Id.* at 29-30).  The Amended Complaint further alleges that Ward and Hinte are close friends and "teamed up on [the plaintiff] as soon as [he] came to MOCC." (*Id.* at 30).

Neither prisoners, nor would-be visitors, have a constitutional right to prison visitation, including any rights under the Due Process Clause of the Fourteenth Amendment or under the First Amendment.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977).  Because there is no constitutional right to visitation, the undersigned proposes

---

8  The Amended Complaint contains allegations that defendant Hinte has also discriminated against, harassed and slandered the identity of the plaintiff's girlfriend, Kira Hairston.  The plaintiff has no standing to assert any claims by or on behalf of Ms. Hairston, or any person other than himself.

that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state any claim that is actionable under section 1983 based upon the alleged denial of visitation.  Moreover, because visitation is not constitutionally guaranteed, the denial thereof cannot serve as a basis of the plaintiff's vague and conclusory "retaliation" claim.

An inmate must point to specific facts which tend to support his allegation of retaliation.  *White v. White*, 886 F.2d 721 (4th Cir. 1989).  Bare assertions of retaliation do not establish a claim of constitutional dimensions.  *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994).  Courts analyze prisoners' claims of retaliation with skepticism.  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc).  The failure to establish that the retaliation adversely impacted the prisoner's exercise of his constitutional rights is fatal to the prisoner's case.  That is, a prisoner asserting a claim of retaliation must show that the alleged retaliatory action deprived him of a protected constitutional right.  Where there is no impairment of a recognized constitutional right, there is no need for the protection provided by a cause of action for retaliation.  Thus, a showing of adversity is essential to any retaliation claim.  *American Civil Liberties Union of Maryland, Inc. v. Wicomico Co., Maryland*, 999 F.2d 780, 785 (4th Cir. 1993).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not specifically alleged sufficient facts that demonstrate the deprivation of any constitutionally protected right as a result of alleged retaliation, and, thus, his Amended Complaint fails to state a plausible retaliation claim.

5.    Equal Protection claim

Page 2 of the plaintiff's Amended Complaint contains a vague and conclusory allegation that the defendants have violated his right to equal protection.  To state a claim for an equal protection violation in a prison setting, "a plaintiff must first

18

demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To meet this requirement, a plaintiff is required to set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). The plaintiff has not alleged any specific facts that would demonstrate that he has been treated differently than other inmates who are similarly situated. Thus, pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state any plausible equal protection claim under the Fourteenth Amendment.

6. Fourth Amendment claim

Page 2 of the plaintiff's Amended Complaint also contains a vague and conclusory allegation stating that "My 4th to unrespected, unreason search & trashn [sic; trashing] of legal property." (ECF No. 34 at 2). A convicted prisoner has no reasonable expectation of privacy in his cell. Thus, the Fourth Amendment provides no protection for inmate challenges to prison cell searches and seizures. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517 (1984). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that to the extent that the plaintiff is attempting to assert a violation of his Fourth Amendment rights, his Amended Complaint fails to state a plausible Fourth Amendment claim.

7. Supervisory liability claims.

As noted above, the plaintiff's Amended Complaint alleges that defendants Caudill, Matheny, Ballard and Rubenstein knew of or learned of the violation of the plaintiff's constitutional rights and "failed to do anything to fix the situation, solve

grievances." (ECF No. 34 at 2).  The Amended Complaint further appears to allege that these supervisors created policies allowing illegal acts and encouraging and showing gross negligence in management.  (*Id.*)

Defendants Matheny and Caudill will be required to respond to the plaintiff's Eighth Amendment allegations.  However, the other allegations against those two defendants appear to address their roles in allegedly denying the plaintiff proper advancement on the QOL Program and his retention in Administrative Segregation, allegations which has been found to insufficiently state any constitutional claim.

Concerning defendant Ballard, the plaintiff's Amended Complaint specifically states as follows:

> On top of all the denials, more importantly  (1) "allowing medical" to give me foods I'm allergic to; (2) "allowing PRO Committee" to restart me in segregation for a negative entry  (Per Policy) its written to abide with rules, (me) going without write up and unaware of (1) or (2) negative entry by "Defendant"  in case shouldn't have restarted me after me (doing good for 2 years on seg: (3) "Allowing staff to deliberately" not do they [sic; their] jobs (meaning) (I) got 20 grievances on C/O's not anssern [sic; answering] emergency boxes never coming in pod to check on medical need or if inmates is [sic; are] alive; (4) "Deliberately denying every grievance" when it's about 20 good accurate issues needing solved – to denie [sic; deny] issue that solvable is cruel.

(ECF No. 34 at 16).  The plaintiff's Amended Complaint further alleges that Warden Ballard violates his own policies, and has failed to press charges, or sanction staff who have failed to properly complete their duties.  (*Id.* at 16-17).

The plaintiff's allegations against defendants Ballard and Rubenstein further appear to contend that these supervisors routinely deny all grievances and ignore inmate complaints.  (*Id.*)  The plaintiff specifically asserts that these defendants have denied investigation into the plaintiff's safety and have condoned or encouraged the failure to protect the plaintiff and "agreed that it was okay for the [the plaintiff] to be

stabbed." (*Id.* at 17, 20).  The plaintiff further asserts that both of these defendants have improperly allowed their subordinates to keep the plaintiff on Administrative Segregation. (*Id.*)

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1)    The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2)    The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3)    There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  *Id.* at 838.

Moreover, in *Iqbal*, the Supreme Court made it clear that, in order to hold a supervisory official liable, a plaintiff must sufficiently allege that the supervisor's own misconduct caused the plaintiff's constitutional deprivations. 556 U.S. at 677. The plaintiff's allegations against defendants Ballard and Rubenstein are largely conclusory and, in some instances, involve allegations concerning claims that have been recommended for dismissal for failure to state a claim. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state sufficient facts to support a plausible claim of supervisory liability against defendants Ballard and Rubenstein, and that those individuals should be dismissed as defendants herein.

### C.    The plaintiff's requests for injunctive relief.

On March 20, 2014, in conjunction with the filing of his Amended Complaint, the plaintiff filed a document which has been docketed as a Motion for Hearing on Temporary Restraining Order and Preliminary Injunction. (ECF No. 35). The first two pages of the document appear to be form Orders for all of the defendants to show cause why the plaintiff is not entitled to temporary or preliminary injunctive relief. (*Id.* at 1-2). On the second page, the plaintiff lists the preliminary injunctive relief that he seeks and attempts to justify its need as follows:

> (1) Release from segregation "QOL Program;" (2) Restore all visitation rights of Kira Hairston, Tara Terry, Kanisha Farmer, Tasha Willis, Penny Connard; (3) Effective medical attention; (4) Stop retaliation. It's been well documented the constant retaliation actions; (5) Restore all rights as inmates at Mt. Olive while my case is pending to respect immediately. If this order is not respected & honour [sic; honored] I will suffer consistently humiliation, cruel & unusual punishment by defendants placed & assign[ed] on (seg QOL Program). Retaliation has already been a deal by filing grievances. Without release I will suffer irreparable damages pursuant to 65(a), will suffer abuse of authority & inaccurate relief from grievances, requests complaints as been for 2 ½ years at Mt. Olive.

(*Id.* at 2).  On the third page of this document, the plaintiff further states as follows:

> With all defendants in this case being everyday officers on segregation
> with its consistent retaliation, I've filed over 100 grievances & it's a
> constant cycle of rules violated and it don't [sic; doesn't] matter.  If it's not
> illegally holding my mail, it's tearn [sic; tearing] my cell up, to holding me
> on segregation "QOL Program," to keepn [sic; keeping] me from getting
> visits, to my safety being at stake, to education, its no way I will ever keep
> sain [sic; sane], positive around negative defendants on my case.  I've sent
> how accurate my "allegedly" complaints and I hope & pray motion is
> granted so I'm able to go to law library and receive requests of life & liberty
> untell [sic; until] this case is settled because without relief it's going to be
> constant harassment, humiliation, retaliation.  Without courts intervening
> (i) will never get off segregation.  For almost 3 years I'm kept with out of
> control inmates when my record here isn't negative.  Hope & pray motion
> is granted (Lewis v. Casey) to regard to.

(*Id.* at 3).

Rule 65(b) of the Federal Rules of Civil Procedure permits the issuance of a

Temporary Restraining Order, without notice to the adverse party, only if "specific facts

in an affidavit or a verified complaint clearly show that the immediate and irreparable

injury, loss or damage will result to the movant before the adverse party can be heard in

opposition."  Fed. R. Civ. P. 65(b).  Furthermore, Rule 65(a) of the Federal Rules of Civil

Procedure provides that a court may issue a preliminary injunction only on notice to the

adverse party.  Fed. R. Civ. P. 65(a).  The remainder of the rule addresses the procedure

for a hearing on motions for a preliminary injunction and the scope of any such

injunction.  *Id.*

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the

applicable standard of review for preliminary injunctions in the case of *The Real Truth*

*About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[9], in light of the

---

[9]  Although the original decision in *Real Truth* was vacated by the Supreme Court for further
consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310

Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555

U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008).  As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior
> to trial at the discretion of the district court that grants relief *pendente lite*
> of the type available after the trial.  *See In re Microsoft Corp. Antitrust
> Litig.*, 333 F.3d 517, 524-26 (4ᵗʰ Cir. 2003); *see also De Beers Consol.
> Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L.
> Ed. 1566 (1945).  Because a preliminary injunction affords, on a temporary
> basis, the relief that can be granted permanently after trial, the party
> seeking the preliminary injunction must demonstrate by "a clear showing"
> that, among other things, it is likely to succeed on the merits at trial.
> *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968,
> 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated
> clearly what must be shown to obtain a preliminary injunction, stating that
> the plaintiff must establish "[1] that he is likely to succeed on the merits,
> [2] that he is likely to suffer irreparable harm in the absence of preliminary
> relief, [3] that the balance of equities tips in his favor, and [4] that an
> injunction is in the public interest."  *Winter*, 129 S. Ct. at 374.  And all four
> requirements must be satisfied.  *Id.*  Indeed, the Court in *Winter* rejected a
> standard that allowed the plaintiff to demonstrate only a "possibility" of
> irreparable harm because that standard was "inconsistent with our
> characterization of injunctive relief as an extraordinary remedy that may
> only be awarded upon a clear showing that the plaintiff is entitled to such
> relief."  *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the

plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than

the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189

(4ᵗʰ Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious

*question* for litigation."  *Id.* at 346-47.  The *Real Truth* further distinguishes the *Winter*

standard from the old *Blackwelder* standard because it no longer requires the court to

balance the irreparable harm to the respective parties, but rather requires the plaintiff to

---

(2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case.  *See* 575 F.3d at 345-347.

make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction.  The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief.  *Id.* at 347.  Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in all federal courts.  *Id.*  Thus, the undersigned will address the plaintiff's two motions for preliminary injunctive relief using this standard

The plaintiff has only asserted speculative and theoretical injury.  A mere possibility of harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21.  Thus, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims, or that he is likely to be irreparably harmed without preliminary injunctive relief.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated a right to a preliminary injunctive relief under the circumstances.

Although the defendants, once served with process, will be called upon to respond to the remaining allegations in the plaintiff's Amended Complaint, at present, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims, or that he is likely to be irreparably harmed without preliminary injunctive relief. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the need for either a Temporary Restraining Order or a Preliminary Injunction under the circumstances.  By separate Order, the undersigned has denied, without prejudice, the plaintiff's Motion for a Hearing on Temporary Restraining Order and Preliminary Injunction (ECF No. 35).

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that, pursuant to 28 U.S.C. § 1915A, and the holdings in *Twombly* and *Iqbal*, *supra*, the presiding District Judge **DISMISS** (1) the plaintiff's claims against all of the defendants in their official capacities; (2) the plaintiff's claims alleging the denial of his rights to due process and equal protection; (3) the plaintiff's claims related to the denial of visitation; (4) the plaintiff's retaliation claims; (5) the plaintiff's claim alleging a violation of the Fourth Amendment; and (6) the plaintiff's claims of supervisory liability against defendants Ballard and Rubenstein.  It is further respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** Curtis Dixon, Gary Hinte, Sgt. Young, Josh Ward, Jason Collins, David Ballard and Jim Rubenstein as defendant herein, but leave this matter referred to the undersigned United States Magistrate Judge for additional proceedings concerning the plaintiff's Eighth Amendment claims against defendants Matheny, Frame, Dickerson, Caudill, Hypes, Donaldson, May and the John Doe defendants, if they are able to be identified.   Finally, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY WITHOUT PREJUDICE** the plaintiff's requests for preliminary injunctive relief, as addressed in ECF No. 35.

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with

the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Goodwin.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

March 31, 2015

Dwane L. Tinsley
United States Magistrate Judge