IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARLAND MURRAY,

v.  CIVIL ACTION NO. 2:13-cv-15798

RUSSELL MATHENEY, et al.,

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Sandra May's Motion for Summary Judgment [ECF No. 215]. The plaintiff filed a Response [ECF No. 234], and the defendant filed a Reply [ECF No. 248]. The motion is now ripe for adjudication. For the reasons stated below, the defendant's motion is **GRANTED**.

I. Background

a. April 1, 2013 Incident

On April 1, 2013 at around 4:00 p.m., the plaintiff, Garland Murray, was stabbed by another inmate while incarcerated at the Mount Olive Correctional Complex ("MOCC"). Mem. Law Supp. Def. Sandra May's Mot. Summ. J. 1 ("Def.'s Mem.") [ECF No. 216]. After the stabbing, the plaintiff was transferred to the medical unit at MOCC where he was evaluated by the defendant, Sandra May. *Id.* at 2. The defendant is a licensed physician's assistant who is employed by Wexford Health Sources, Inc. at MOCC. *Id.*

The plaintiff alleges that after he was stabbed, the defendant "refused to treat [his] serious wounds and injuries, [and] delayed access to medical surgery for seven

hours." Pl.'s Resp. to Def. Sandra May's Mot. Summ. J. ("Pl.'s Resp.") 1 (emphasis omitted) [ECF No. 234]. The plaintiff alleges that when he arrived at the medical unit he told the defendant he could not breathe, and she responded that nothing was wrong with him and that he should return to his cell. *Id.* at 4. According to the plaintiff, the defendant told him she "would give him some band aids later, and that in the meantime he could press his shirt, which had been cut off of him for the examination, to his wounds." *Id.* The plaintiff contends that the defendant never listened to his lungs despite his repeated statements regarding his inability to breathe. *Id.*

The plaintiff maintains that he refused to return to his cell and that guards threatened him with mace. *Id.* The plaintiff says that he continued to refuse, telling them that he could not breathe and felt like he was dying. *Id.* Then the officers left the room with the defendant. *Id.* At 6:40 p.m., the defendant ordered the plaintiff to be transferred to the hospital. *Id.*

The plaintiff was transported to Montgomery General Hospital ("MGH"), where it was determined that he had a collapsed lung. *Id.* at 5. Since the hospital did not have the equipment necessary to treat the plaintiff's injury, he was transferred to the trauma center at Charleston Area Medical Center ("CAMC"). *Id.* The plaintiff arrived at CAMC at 10:51 p.m. *Id.* The plaintiff was treated at CAMC, and was discharged on April 3, 2013. Def.'s Mem. 2.

### b. The Plaintiff's Stay in the Infirmary—April 3–4, 2013

When the plaintiff was discharged from CAMC, he was returned to MOCC, where he was placed in the medical infirmary. *Id.* CAMC provided the plaintiff with a copy of his discharge instructions, which he provided to the medical staff at MOCC. Pl.'s Resp. 5. The plaintiff alleges that the defendant treated him in the infirmary. *Id.* The defendant, however, alleges that she only treated the plaintiff one time after he returned from the hospital, on May 22, 2013, well after the defendant was released from the infirmary. Def.'s Mem. 8. While in the infirmary, the plaintiff was given a band aid and A+D ointment to apply to his wounds. Pl.'s Resp. 5. The plaintiff alleges that "[h]is wounds were not cleaned, he was not provided access to a shower, and he was not provided the prescribed medication, even though he advised Ms. May that he was still in pain and in contravention of the CAMC discharge orders." *Id.*

### c. After the Plaintiff was Released From the Infirmary

The plaintiff was released from the infirmary on April 4, 2013. Def.'s Mem. 2. According to the plaintiff, when he was returned to his solitary confinement cell, he "continued to request treatment, including by pressing his emergency call button, filing grievances, and filling out sick calls." Pl.'s Resp. 5. The plaintiff alleges that the defendant "continued to refuse to comply with the CAMC discharge orders to keep the wound cleaned and bandaged and treat [the plaintiff's] pain from his recovery from surgery." *Id.* The defendant argues that this is not true, and that the plaintiff repeatedly refused medical treatment after he returned to his cell. Def. Sandra May's Reply to Pl.'s Resp. to Def. Sandra May's Mot. Summ. J. 17 ("Def.'s Reply") [ECF No.

248]. The plaintiff alleges that other nurses who responded to his sick calls advised him that the defendant was a level above them, and that the defendant would not permit them to refer him to see the defendant or the other medical staff because he was fine. Pl.'s Resp. 5–6. The plaintiff alleges that without proper cleaning and treatment, his wound became infected and his neck wound swelled and filled with pus. *Id.* at 6. The defendant contends that the plaintiff did not develop an infection as a result of his wounds. Def.'s Mem. 14. The plaintiff alleges that as a result of the stabbing and the failure to timely and properly treat his wounds, he "continues to suffer difficulty breathing and ongoing pain in his arm/collarbone area, as well as significant anxiety." Pl.'s Resp. 6.

## II. Procedural Background

On August 26, 2016, the plaintiff filed his second amended complaint. Am. Compl. ("Am. Compl.") [ECF No. 112]. On September 9, 2016, the defendant filed a motion to dismiss. Def. Sandra May's Mot. Dismiss Amend. Compl. [ECF No. 115]. The court granted this motion as to the plaintiff's Fourteenth Amendment claim, West Virginia State Constitutional claim, and negligence claim. Order [ECF No. 134]. The court, however, allowed the plaintiff's claim under 42 U.S.C. § 1983 to proceed. *Id.*

On June 23, 2017, the defendant filed this motion for summary judgment. The motion argues that summary judgment is proper because: (1) the court lacks subject matter jurisdiction because the plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and West Virginia Prison

Litigation Reform Act ("WVPLRA"); and (2) even if the plaintiff did exhaust his administrative remedies, the plaintiff has not proffered any evidence that creates a genuine issue of material fact that the defendant violated the plaintiff's Eighth Amendment rights.

### III. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

IV. Discussion

    a. Exhaustion of Administrative Remedies Under the PLRA

The defendant first argues that summary judgment is proper because the court lacks subject matter jurisdiction. Def.'s Mem. 5. Specifically, the defendant argues that the plaintiff did not exhaust his administrative remedies by timely filing and appealing grievances regarding the treatment that the defendant provided him, as required by the PLRA and WVPLRA. *Id.*

Congress passed the PLRA "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate

a civil action." *Id.* One of these limitations is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016), *adopted by* 2016 WL 707457 (S.D. W. Va. Feb. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the WVPLRA "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. Feb. 23, 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The

7

WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . health care . . . [and] staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

§ 25-1A-2(d).

Contrary to the defendant's position, the PLRA and WVPLRA are not a jurisdictional prerequisite. *Jones v. Block*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Instead, "failure to exhaust available administrative remedies is an affirmative defense." *Moore*, 517 F.3d at 725.

If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, 2017 WL 722604, at \*2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at \*3 (S.D. W. Va. 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

At the time the plaintiff filed complaints regarding the issues in this case, Section 90 of the West Virginia Code provided the procedures that inmates were required to follow when filing a grievance. The steps for filing and appealing grievances are outlined below:

> An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." [W. Va. Code] § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. §§ 90-9-4.2, 90-9-4.3. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. § 90-9-4.3. The unit manager is required to return an answer to the grievance back to the inmate within five days. § 90-9-4.5. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review. Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." § 90-9-5.1. "The Warden/Administrator shall respond to the appeal ... within five (5) days." § 90-9-5.4. Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed. § 90-9-6.1. The Commissioner is allotted ten days to respond to the appeal. § 90-9-6.3.

*Id.*

Here, the plaintiff argues that he filed four grievances regarding his medical care, and that the court should find that all four were exhausted. Pl.'s Resp. 9. The plaintiff argues that grievance number 414 satisfies the PLRA's exhaustion requirement because the commissioner "accepted" the grievance. He also argues that

9

while grievance numbers 405, 435, and 482 were rejected by the commissioner, they should still be considered exhausted, because "the prison interfered with [his] ability to exhaust by failing to return [the] grievances and not following prison policies." Pl.'s Resp. 11. I will consider each of his arguments below.

The plaintiff argues that grievance number 414, which was filed on April 8, 2013, was properly exhausted because the commissioner placed a check mark in the "accepted" section of the grievance. *Id.* at 9. Generally, the plaintiff would be correct, because "accepted" means that the grievance was formally received and reviewed on the merits. Policy Directive No. 335, State of West Virginia Division of Corrections 1 ("Policy Dir. No. 335"). Here, however, the commissioner checked the accepted box without actually reviewing the complaint on the merits. Instead, the commissioner affirmed the prior findings of the warden that the plaintiff did not follow proper procedures in filing his grievances. Pl.'s Resp. Ex. J, at 2 [ECF No. 234-6]. Specifically, the warden rejected the grievance for asserting more than "one issue/ [claim for] relief . . . in a single grievance." *Id.*

DOC Policy Directive 335(V)(A)(4) states "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted his administrative remedies." Policy Dir. No. 335, at 5. Since the Policy Directive also states that "[a]n inmate may grieve only one (1) issue or complaint per form," *id.* at 6, and the plaintiff failed to do so, grievance number 414 was not properly exhausted, and therefore does not satisfy the

requirements of the PLRA or WVPLRA. The plaintiff could have corrected this defect within five days and refiled the grievance, but he failed to do so. *Id.*

The plaintiff filed three additional grievances, grievance numbers 405, 435, and 482, regarding the medical treatment he received at MOCC after he was stabbed. Pl.'s Resp. Ex. J, at 2, 4–6. These grievances were timely filed and appealed all the way to the commissioner level. *Id.* These grievances, however, were rejected by the commissioner because the plaintiff failed to follow proper procedures. Def. Sandra May's Mot. Summ. J. Ex. 10, at 1 [ECF No. 215-10]. As explained with regard to grievance number 414, when an inmate's grievance is rejected because the inmate failed to follow proper procedures, the inmate did not exhaust his or her administrative remedies. *Id.* The plaintiff argues that these grievances should still be considered exhausted, because (1) the plaintiff never received a response from the commissioner, and (2) the commissioner did not follow DOC Policy Directive 335 when he failed to give a more in depth explanation as to which procedural requirements the plaintiff failed to meet. Pl.'s Resp. 11–13.

First, the plaintiff alleges that grievance numbers 405, 435, and 482 should be considered exhausted because the prison "interfered with [his] ability to exhaust by failing to return grievances." Pl.'s Resp. 11. Under the PLRA, prisoners must exhaust "such administrative remedies as are *available*." 42 U.S.C.A. § 1997e(a) (emphasis added). Prisoners, however, "need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was

11

prevented from availing himself of it." *Moore,* 517 F.3d at 725. "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel*, 2017 WL 4004579, at *4. Since whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge," disputed questions of fact are resolved by the court. *Id.*

The defendant has met her burden of proving that the plaintiff failed to exhaust his administrative remedies. Thus, the next question is whether the plaintiff has met his burden of proving that the remedies were unavailable. The court finds that the plaintiff failed to sufficiently prove that his ability to exhaust his administrative remedies was hindered because the commissioner failed to return his grievances. *See Hill v. O'Brien*, 387 F. App'x. 396, 401 (4th Cir. 2010). The evidence before the court is that the commissioner rejected the grievances and sent a letter stating as much to the plaintiff through the warden, David Ballard, on June 11, 2013. Def.'s Mot. Ex. 10, at 1 [ECF No. 215-10]. The plaintiff's assertions stating otherwise are simply unpersuasive. *See Creel*, 2017 WL 4004579, at *4 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust.")

Second, the plaintiff argues that his administrative remedies were unavailable because the commissioner's explanation of why he rejected the grievances was procedurally inadequate. When the Commissioner rejected the three grievances for procedural deficiencies, he attached a memo stating:

> At this time the . . . grievances are being rejected as you have failed to follow the proper procedure as outlined in West Virginia Division of Corrections Policy Directive 335.00. Failure to follow the proper procedure will result in rejection and no review will be undertaken in regards to grievances filed outside of policy and procedure. Failure to follow the proper procedure does not exhaust your administrative remedies.

Def. Sandra May's Mot. Summ. J. Ex. 10, at 1. The plaintiff argues that the commissioner did not state which specific procedure was not followed, and therefore did not give him the opportunity to correct the error. Pl.'s Resp. 12. This argument also fails. The court simply cannot find that the administrative process was made unavailable to the plaintiff by the commissioner failing to explain with specificity which procedures the plaintiff did not follow. The plaintiff could have determined which procedure he did not follow by reviewing the policy manual himself or asking for more specific information. Under Section V(B)(4) of DOC Policy Directive 335, the plaintiff then could have corrected his defective grievances and refiled them within five days of the rejection. Policy Dir. No. 335, at 6. Thus, the administrative process was available to the plaintiff.

I find that the defendant met her burden of proving that the plaintiff failed to file and timely appeal any grievances regarding the defendant as required by the PLRA and WVPLRA. I also find that the plaintiff failed to establish that the administrative remedies at MOCC were made unavailable to him. Thus, the PLRA and WVPLRA bar the plaintiff's claims as to Defendant May. Even assuming,

however, that the remedies were made unavailable to the plaintiff, summary judgment would still be proper.

### b. Deliberate Indifference

The defendant also argues that summary judgment is proper, because the plaintiff did not proffer any evidence that creates a genuine issue of material fact that the defendant violated the plaintiff's Eighth Amendment rights.[1] Def.'s Mem. 10.

"In order to prevail on a § 1983 claim, a plaintiff must show that the defendant deprived him of a right secured by the Constitution and laws of the United States and that the defendant acted under color of state law."[2] *Lester*, 85 F. Supp. at 858 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49 (1999). "The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). In *Estelle v.*

---

[1] There are multiple facts in dispute. First, the parties dispute whether the defendant listened to the plaintiff's lungs after he was stabbed. Pl.'s Resp. 4; Def.'s Mem. 2. Second, the parties dispute how many times the defendant treated the plaintiff after he returned from the hospital. The plaintiff alleges that the defendant treated him while he was in the infirmary and several times after he returned to his cell. Pl.'s Resp. 5–6. The defendant, however, alleges that she only treated the plaintiff one time after he returned from the hospital, on May 22, 2013. Def.'s Mem. 8. Third, the parties dispute whether the defendant's wounds became infected. The plaintiff maintains that it did, Sec. Amen. Compl. 18, while the defendant maintains that it did not. Def.'s Reply 10. Lastly, the parties dispute whether the plaintiff ever refused any of the medical treatment he was offered for his wounds. Def.'s Reply 17; Pl.'s Resp. 19–20. Since the plaintiff is the non-moving party, the court will assume that the plaintiff's contentions on these issues are true in analyzing whether summary judgment is appropriate. *Harris v. Kinder*, No. 2:13-10803, 2015 WL 631291, at * (S.D. W. Va. Feb. 12, 2015) (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)) ("[T]he party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.").

[2] The parties do not dispute that the defendant, a state contracted medical provider, was acting under color of state law when she treated the plaintiff.

*Gamble*, 429 U.S. 97, 97 (1976), the Supreme Court established that the Eighth Amendment could be applied to deprivations that are not specifically part of the sentence, but instead are suffered during imprisonment. *Wilson*, 501 U.S. at 297. The Court has consistently held, however, that the Constitution "'does not mandate comfortable prisons' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 298 (citations omitted).

"Under the Eighth Amendment, sentenced prisoners are entitled to 'adequate food, clothing, shelter, sanitation, medical care and personal safety.'" *Kelly v. United States*, No. 1:15-04914, 2016 WL 8711519, at *11 (S.D. W. Va. Jan. 15, 2016) (citations omitted), *adopted by* 2016 WL 1060846 (S.D. W. Va. Mar. 17, 2016). "[T]he denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Estelle*, 429 U.S. at 103).

There is both an objective and subjective component to showing a violation of the Eighth Amendment when the plaintiff is alleging that the defendant failed to provide adequate medical treatment. *IKO v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "The plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Id.*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Id.* (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.1999)). The defendant concedes that the plaintiff had a serious medical need. Def.'s Mem. 11. Thus, the only issue is whether the plaintiff has made sufficient factual allegations to show that the defendant was deliberately indifferent to his serious medical need.

"An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *IKO*, 535 F.3d at 241 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *King v. United States*, 536 F. App'x. 358, 361 (4th Cir. 2013) (quoting *Farmer,* 511 U.S. at 837). The Fourth Circuit has held that to constitute deliberate indifference to a serious medical need, the treatment the defendant provided "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)).

It is well-settled that "mere negligence or malpractice does not violate the [E]ighth [A]mendment." *Id.* (quoting *Miltier,* 896 F.2d at 852); *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Additionally, "[a]n inmate's disagreement with a medical officer's diagnosis or course of treatment will not support a valid Eighth Amendment

16

claim." *Daye v. Proctor*, No. 1:13-cv-227, 2015 WL 1021560, at *3 (N.D. W. Va. Mar. 4, 2015) (citing *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975)).

The plaintiff alleges that the defendant was deliberately indifferent to his serious medical needs on the day of the stabbing as well as after he returned from the hospital. As to the treatment he received on the day of the stabbing, the plaintiff alleges that the defendant was deliberately indifferent by: (1) telling him that nothing was wrong with him at first, (2) making him press his shirt into his wounds before giving him a bandage, (3) not listening to his lungs despite his repeated statements that he could not breathe, (4) not ordering his transport to the hospital until 2.5 hours after he was stabbed, and (5) by transporting him to a hospital that did not have the equipment necessary to treat his medical needs. Pl.'s Resp. 3–4.

The plaintiff alleges that the defendant was also deliberately indifferent to his serious medical needs after he returned from the hospital by: (1) "refusing to follow CAMC's discharge orders, thereby denying [him] the medication and treatment plan that CAMC had provided," (2) "refus[ing] to provide [him] with fresh bandages to redress his wounds," (3) making him go up to three days at a time without providing him the ability or materials to clean his wounds, and (4) refusing his requests to see medical professions which resulted in his wounds becoming infected. Sec. Am. Compl. 17–18.

Even when drawing all permissible inferences in the light most favorable to the plaintiff, no reasonable juror could conclude that the defendant was deliberately indifferent to the plaintiff's medical needs—that is that the defendant's treatment

was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *King*, 536 F. App'x. at 361 (citations omitted). The defendant examined the plaintiff after he was stabbed and decided that he should be taken to a hospital.[3] The defendant then instructed a nurse to contact an ambulance for the plaintiff to be transported to MGH, and to call MGH to inform its staff that an inmate would be transported to the hospital in the near future. Def.'s Mem. 2.

After the plaintiff returned from the hospital, he was monitored in MOCC's medical infirmary. Pl.'s Resp. 17. After being released from the infirmary, the plaintiff continued to receive medical care including on April 4, April 5, April 11, April 16, April 24, May 2, May 21, May 22, May 24, June 11, and July 1. Def. Sandra May's Mot. Summ. J. Ex. 4–6. During these visits, the medical staff assisted the plaintiff with cleaning his wounds and covering them with bandages. *Id.* The only issue here is that the plaintiff disagrees with the defendant's course of treatment. This does not, however, support a valid Eighth Amendment claim. *Daye*, 2015 WL 1021560, at *3 (citations omitted). Since the plaintiff has failed to offer "concrete evidence from which a reasonable juror could return a verdict in his . . . favor," summary judgment is proper. *Anderson*, 477 U.S. at 256.

---

[3] The defendant maintains that it is Wexford protocol that all stab victims be sent to an outside facility for further evaluation.

## V. Conclusion

The plaintiff failed to exhaust his administrative remedies as required by the PLRA and WVPLRA. Additionally, even if the plaintiff had exhausted his remedies, or proven that the administrative remedies were unavailable to him, summary judgment would still be proper because he failed to demonstrate that the defendant was deliberately indifferent to his serious medical needs. Therefore, Defendant Sandra May's Motion for Summary Judgment is **GRANTED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 17, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE