IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARLAND MURRAY,

v.                                          CIVIL ACTION NO. 2:13-cv-15798

RUSSELL MATHENEY, et al.,

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Corporal Paul Donelson's Motion for Summary Judgment [ECF No. 222]. The plaintiff filed a Response [ECF No. 242], and the defendant filed a Reply [ECF No. 247]. The motion is now ripe for adjudication. For the reasons stated below, the defendant's motion is **GRANTED**.

I.     **Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary

judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

II. Prison Litigation Reform Act

The defendant argues that summary judgment is proper because the plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation

Reform Act ("PLRA") and the West Virginia Prison Litigation Reform Act ("WVPLRA"). Mem. Law Supp. Def. Corporal Paul Donelson's Mot. Summ. J. 5–8 ("Def.'s Mem.") [ECF No. 223]; Def. Paul Donelson's Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 3–5 ("Def.'s Reply") [ECF No. 247].

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016), *adopted by* 2016 WL 707457 (S.D. W. Va. Feb. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the WVPLRA "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va.

Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

§ 25-1A-2(d).

If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)). Thus, disputed questions of fact regarding exhaustion of administrative remedies are resolved by the court. *See id.*

4

At the time the plaintiff filed his grievances regarding the issues in this case, Section 90 of the West Virginia Code provided the controlling procedures. The steps for filing and appealing grievances are outlined below:

> An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." [W. Va. Code] § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. §§ 90-9-4.2, 90-9-4.3. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. § 90-9-4.3. The unit manager is required to return an answer to the grievance back to the inmate within five days. § 90-9-4.5. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review. Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." § 90-9-5.1. "The Warden/Administrator shall respond to the appeal ... within five (5) days." § 90-9-5.4. Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed. § 90-9-6.1. The Commissioner is allotted ten days to respond to the appeal. § 90-9-6.3.

*Id.*

Here, the plaintiff argues that he filed three grievances that exhausted his administrative remedies as required by the PLRA and WVPLRA, including grievance numbers 279, 414, and 500. Pl.'s Resp. Opp'n to Def. Donelson's Mot. Summ. J. 12 ("Pl.'s Resp.") [ECF No. 242]. The court will address each individual grievance below.

5

### a. Grievance Number 414

The plaintiff argues that grievance number 414, which was filed on April 8, 2013, properly exhausted his administrative remedies because the commissioner placed a check mark in the "accepted" section of the grievance. Pl.'s Resp. 12 n.4. Generally, the plaintiff would be correct, because "accepted" means that the grievance was formally received and reviewed on the merits. Policy Directive No. 335, State of West Virginia Division of Corrections 1 ("Policy Dir. No. 335"). Here, however, the commissioner checked the accepted box without actually reviewing the complaint on the merits. Instead, the commissioner affirmed the prior findings of the warden that the plaintiff did not follow proper procedures in filing his grievances. Pl.'s Resp. Ex. J, at 2 [ECF No. 234-6]. Specifically, the warden rejected the grievance for asserting more than "one issue/ [claim for] relief . . . in a single grievance." *Id.*

DOC Policy Directive 335(V)(A)(4) states "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted his administrative remedies." Policy Dir. No. 335, at 5. The Policy Directive also states that "[a]n inmate may grieve only one (1) issue or complaint per form." *Id.* at 6. The plaintiff failed to follow this directive. Thus, grievance number 414 was not properly exhausted, and therefore does not satisfy the requirements of the PLRA or WVPLRA. The plaintiff could have corrected this defect within five days and refiled the grievance, but he failed to do so. *Id.*

Thus, the court **FINDS** that grievance number 414 was not properly exhausted, nor was it made unavailable to the plaintiff.

b. Grievance Number 500

Grievance number 500 states:

> My only question is "after i explained i feared recing w/ racist inmates & after knowing thes inmates were in some racist group / practicing racist beliefs (why) didn't you take me off their rec group" ? Why did i have to get attacked before someone takes action ? Even the fact that one of racist inmates already [sic] into other attacks (why) give opportunitys available to him to provoke others to do stabbings/attacks?

Def. Corporal Paul Donelson's Mot. Summ. J. Ex. 3, at 6 ("Def.'s Mot.") [ECF No. 222-3]. In the relief sought section of the grievance, the plaintiff states "*explanation of why (i) got set up for a hate crime*?" *Id.*

The unit manager accepted this grievance and responded "There was no evidence that you were in danger from any of the other I/M's." *Id.* The plaintiff appealed the unit manager's response to the warden. *Id.* The warden rejected the grievance stating his reason as "Question instead of a grievance/complaint." *Id.* The plaintiff appealed the warden's answer to the commissioner. *Id.*

The plaintiff concedes that grievance number 500 was not properly exhausted, but argues that it should be considered exhausted, because prison officials prevented him from exhausting it in two ways. First, he argues that the warden prevented him from exhausting his administrative remedies by rejecting his grievance for improper reasons. Second, he argues that the commissioner prevented him from exhausting his

administrative remedies by failing to return the grievance to him.

Under the PLRA, prisoners must exhaust "such administrative remedies as are *available*." 42 U.S.C.A. § 1997e(a) (emphasis added). Prisoners, however, "need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Creel*, 2017 WL 4004579, at *4. Since whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge," disputed questions of fact are resolved by the court. *Id.*

The defendant has met his burden of proving that the plaintiff failed to exhaust this grievance. Thus, the next question is whether the plaintiff has met his burden of proving that the administrative remedy was unavailable. In a previous order ruling on a different motion for summary judgment in this case, the court held that the plaintiff failed to sufficiently prove that his ability to exhaust his administrative remedies was made unavailable because the commissioner failed to return his grievances. Mem. Op. & Order 11–13 [ECF No. 299]. The court finds that the same is true here.

The warden's reason for rejecting the grievance also did not make the

administrative procedures unavailable to the plaintiff. The warden rejected the grievance stating his reason as "Question instead of a grievance/complaint." Def.'s Mot. Ex. 3, at 6. Policy Directive No. 335(V)(D)(1) states "[s]hould the inmate believe that the Warden/Administrator's response does not resolve his/her greivance . . . the inmate may submit an appeal to the Commissioner . . . within five (5) days." Thus, if the plaintiff was unsatisfied with the reason for the warden's rejection, he could have appealed it, which he did. The court cannot find that the administrative process was made unavailable to the plaintiff given that there were administrative procedures in place for him to appeal the warden's answer.

Thus, the court **FINDS** that grievance number 500 was not properly exhausted, nor was it made unavailable to the plaintiff.

c. Grievance Number 279

Lastly, the plaintiff argues that grievance number 279 should be considered exhausted because the grievance was not returned to him by the unit manager until after the time to appeal had expired. This argument, like the ones above, turns on whether the unit manager's alleged failure to return the grievance to the plaintiff made the administrative remedy "unavailable" to the plaintiff.

This argument also fails. First, Policy Directive No. 335(V)(B)(7) states that if a unit manager fails to answer or reject a grievance within five days, then "the inmate may treat the non-response as a denial of his/her grievance." The inmate may then appeal the denial to the warden and indicate that the unit manager failed to respond

9

in a timely fashion. Policy Dir. No. 335(V)(B)(7). Thus, the unit manager's failure to respond did not make the administrative process unavailable to the plaintiff. To the contrary, the plaintiff could have continued on through the grievance process by appealing the grievance to the warden.

Thus, the court **FINDS** that grievance number 279 was not properly exhausted, nor was it made unavailable to the plaintiff.

### III. Conclusion

The plaintiff failed to exhaust his administrative remedies as required by the PLRA and WVPLRA as to Defendant Donelson. Therefore, Defendant Corporal Paul Donelson's Motion for Summary Judgment is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 18, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE