IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARLAND MURRAY,

v.  CIVIL ACTION NO. 2:13-cv-15798

RUSSELL MATHENEY, et al.,

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants, James Rubenstein, David Ballard, Russell Matheny, Steve Caudill, and David Miller's, Motion for Summary Judgment [ECF No. 218].[1] The plaintiff filed a Response [ECF No. 237], and the defendants filed a Reply [ECF No. 244]. The motion is now ripe for adjudication. For the reasons stated below, the defendants' motion is **GRANTED in part** and **DENIED in part**.

I.  Facts

The plaintiff, Garland Murray, has been incarcerated at the Mount Olive Correctional Complex ("MOCC") since 2012. Pl.'s Resp. Opp'n to Partial Mot. Summ. J. of Defs. Rubenstein, Ballard, Matheny, Caudill, & Miller 2 ("Pl.'s Resp.") [ECF No. 237]. From 2012 to 2016, the plaintiff was housed in solitary confinement in the Quilliams Units of MOCC. *Id.* During this time, he was permitted one hour of recreation five times per week. *Id.* The plaintiff maintains that in 2013, he was the only African American in his recreation group, and in this group, there were a couple

---

[1] After this motion was filed, the parties stipulated to dismiss Defendant David Miller from this action. Stip. Dismiss David Miller 1 [ECF No. 298]. Thus, this order will not address any arguments regarding David Miller.

of known racist inmates who he believed were armed with improvised weapons. Am. Compl. 11–12 [ECF No. 112]. According to the plaintiff, he repeatedly refused to go to the recreation yard when it was his designated time because he was scared of those racist inmates. *Id.*

On March 12, 2013, the plaintiff filed a grievance stating:

> I've addressed this problem on Requests & to staff about being on (Single Rec) Before (I) get into a altercation. Im still placed within rec with others. Im in fear on rec with others. I don't want to rec with anyone for sake of my safty. So please put me on single rec before i get into trouble – please – thank you

Compl. Ex. 1, at 1 [ECF No. 2-1]. On March 13, 2013, the unit manager, defendant Russell Matheny, responded, "you can fill out a special management request and be seen by the committee if you like. Let me know and we will bring you [sic] to fill out the request." *Id.* The plaintiff maintains that after this, defendant Matheny went on vacation without placing him on single rec or notifying other staff of the plaintiff's concerns. *Id.* at 13. The defendants maintain, however, that the plaintiff was not placed on single rec because he failed to fill out a special management request form. Defs., James Rubenstein, David Ballard, Russell Matheny, Steve Caudill, and David Miller's Mem. Law Supp. Mot. Summ. J. 2 ("Defs.' Mem.") [ECF No. 219].

On April 1, 2013, the plaintiff was stabbed by another inmate, Kristopher Creel, while on recreation. *Id.* at 1. Creel was able to bring the weapon into the recreation yard because defendant Paul Donelson failed to strip search or screen the inmates before they went to recreation on that day. Am. Compl. 14. Defendant Steve

2

Caudill was the captain in charge of the unit as a stand-in for Captain Matheny the day the plaintiff was stabbed. Pl.'s Resp. 4. Defendant David Ballard was the warden of MOCC, and defendant James Rubenstein was commissioner of the Division of Corrections. *Id.* at 8.

On June 26, 2013, the plaintiff filed this action against the defendants. Compl. [ECF No. 2]. On August 8, 2016, the plaintiff filed his second amended complaint. Am. Compl. The amended complaint contains three causes of action against the defendants: Count One alleges that the defendants violated the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983; Count Two alleges that the defendants violated Article III, Sections 1, 5, and 10 of the West Virginia Constitution; Count Three alleges that the defendants were negligent. *Id.* at 22–26.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary

3

judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

III. Discussion

    a. Count One: 42 U.S.C. § 1983

The plaintiff brings a Section 1983 claim against each of the defendants alleging that they violated his Eighth and Fourteenth Amendment rights.[2] The court will address each of the plaintiff's Section 1983 claims below.

        i. Russell Matheny

"In order to prevail on a [Section] 1983 claim, a plaintiff must show that the defendant deprived him of a right secured by the Constitution and laws of the United States and that the defendant acted under color of state law." *Lester*, 85 F. Supp. at 858 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). "The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991).

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted) (quotation marks omitted). The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates."

---

[2] The court is under the impression that the plaintiff only included the Fourteenth Amendment in Count One to the extent that it incorporates claims for violations of rights enshrined in the Bill of Rights against the states. Thus, the court will not conduct a separate analysis regarding whether summary judgment is warranted as to the plaintiff's Fourteenth Amendment claim.

*Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). This includes a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) ("The eighth amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm.").

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Instead, prison officials only violate the Eighth Amendment when two requirements are met. *Id.* "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson,* 501 U.S. at 298). This means that, "[f]or a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* "Though guidance is limited on the question of what precisely constitutes sufficiently serious deprivation, the threat of a beating by another inmate clearly satisfies" this requirement. *Denney v. Berkley Cnty.*, No. 3:10-1383-RMG-JRM, 2012 WL 3877732, at *5 (D. S.C. Sept. 5, 2012).

The second requirement mandates that the prison official have acted with "deliberate indifference" to the inmate's safety. *Farmer*, 511 U.S. at 837. Deliberate indifference is a subjective requirement which necessitates that the prison official both "know[] of *and* disregard[] an excessive risk to inmate health or safety." *Id.*

6

(emphasis added). This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "This subjective assessment 'sets a particularly high bar to recovery' which cannot be met by 'a showing of mere negligence.'" *Parker v. Maryland*, 413 Fed. App'x 634, 638 (4th Cir. 2011) (citations omitted).

Here, with regard to the first element, the plaintiff was fearful that he would be attacked, and he was in fact attacked and stabbed multiple times. Thus, there is a genuine issue of material fact as to whether he faced an objective, sufficiently serious deprivation.

With regard to the second requirement, the defendant maintains that while the plaintiff "may have voiced his fears to Correctional Officers in general terms," he "[n]ever stated that he had a particularized fear of a specific inmate or group of inmates." Defs., James Rubenstein, David Ballard, Russell Matheny, and Steve Caudill's Reply to Pl.'s Resp. to Defs.' Mot. Summ. J. 3 ("Defs.' Reply") [ECF No. 244]. This argument is unpersuasive. In *Farmer*, the Supreme court made clear "that 'a prison official [cannot] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.'" *Madessi v. Fields*, 789 F.3d 126, 135 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 843).

On March 12, 2013, two weeks before the incident, the plaintiff filed a grievance stating:

> I've addressed this problem on Requests & to staff about being on (Single Rec) Before (I) get into a altercation. Im still placed within rec with others. Im in fear on rec with others. I don't want to rec with anyone for sake of my safty. So please put me on single rec before i get into trouble – please – thank you

Compl. Ex. 1, at 1. Defendant Matheny signed and responded to this grievance the next day. *Id.* Additionally, the plaintiff submitted an affidavit from another inmate, Keith W.R. Lowe, which states:

> I had a conversation with Capt. Matheney behind the glass about another inmate named Murray. Capt. Matheney was joking around and said "well it looks like you put another one on single Rec" and I said who? Matheney said old tough ass Garland Murray, apparently he thinks the Aryan Brotherhood is going to stab him. He then said, what did I think the reason was. I said I have no ideal why he is on single rec but It had nothing to do with me. Captain Matheney said that he was not stupid and that he received information, but that he could careless if AB stabbed him or not, just don't do it on his watch, but regardless he wasn't going to place him on single rec.

Exs. M to V Opp'n Defs.' Mot. Summ. J. Ex. T, at 1 [ECF No. 238-7].

Based on these facts, the court **FINDS** that the plaintiff has raised a genuine issue of material fact as to whether Defendant Matheny was deliberately indifferent to the plaintiff's safety.

### ii. Defendants James Rubenstein & David Ballard

The plaintiff further alleges that defendants James Rubenstein and David Ballard have "supervisory liability" for the plaintiff's constitutional claims. "The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "There is, however, no respondeat superior liability pursuant to 42 U.S.C. § 1983." *Berry v. Rubenstien*, No. 1:07-00535, 2008 WL 1899907, at *2 (S.D. W. Va. Apr. 25, 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, "'[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Id.* (quoting *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977)).

"Recognizing that supervisory liability can extend 'to the highest levels of state government,'" the Fourth Circuit has held that supervisory liability "ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984), *cert. denied,* 470 U.S. 1035 (1985)). There are three elements necessary to establish supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that

9

> the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799.

In order to establish the first element, the plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

Turning to the second element, the plaintiff "may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). The Fourth Circuit has held:

> The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because: [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he

> either was deliberately indifferent or acquiesced in the
> constitutionally offensive conduct of his subordinates.

*Id.* (citations omitted).

The third element for supervisory liability is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted). Causation in this context encompasses both cause in fact and proximate cause. *Id.* The Fourth Circuit has held that the "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Id.* (citations omitted).

Here, the plaintiff argues that defendants Rubenstein and Ballard have supervisory liability for his Section 1983 claims. Pl.'s Resp. 15. The plaintiff maintains that these defendants were aware that there were significant unresolved staffing shortages at MOCC, and that "staffing shortages led to mistakes, errors, and reduction in safety." *Id.* The plaintiff also maintains that they were aware that inmates had attacked others on the Quilliams II recreation yard prior to the date the plaintiff was stabbed, but that they failed to take any measures to increase inmate protection. *Id.*

The plaintiff further alleges that these defendants "created and supported a culture of coercion and lack of respect for inmates' justifiable fears by either

11

instituting 'martial law' or refusing to contradict its existence; and by instituting policies that directed officers not to avoid confrontation with inmates or to utilize efforts to temper force against inmates, including in their training of officers." *Id.* at 16. According to the plaintiff, "[t]his atmosphere led directly to officers ignoring [the plaintiff's] fears." *Id.* Finally, the plaintiff alleges that "[d]efendant Rubenstein created the parameters for the contract with the medical provider, which creates significant incentives to limit care." *Id.*

The facts, when viewed in the light most favorable to the plaintiff, do not show that defendants Rubenstein and Ballard's conduct violated his constitutional rights. The plaintiff has failed to establish the first element of supervisory liability—i.e. that either of these defendants "had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff." *Shaw*, 13 F.3d at 799. The plaintiff was stabbed after defendant Paul Donelson failed to search all of the inmates before they went on recreation. The plaintiff failed to present any evidence that these defendants had any knowledge of conduct like this occurring in the past. The plaintiff states that defendants Rubenstein and Ballard "were aware [sic] that inmates had attacked others on the Quilliams II recreation yard *prior* to the date [the plaintiff] was attacked," but he does not cite any evidence to support this.[3] Pl.'s Resp. 15. This bare assertion, however, is insufficient to allow this claim to survive summary

---

[3] Hundreds of pages of exhibits were entered in this matter. It is the party's responsibility to cite to the court which exhibits they are relying on when making factual assertions.

judgment. The plaintiff has also failed to allege enough facts to support the second element, deliberate indifference. *Shaw*, 13 F.3d at 799.

The court **FINDS** that summary judgment is proper as to the plaintiff's supervisory liability claims against defendants Ballard and Rubenstein.

### iii. Defendant Steve Caudill

The plaintiff also alleges that defendant Steve Caudill has supervisory liability under Section 1983. Am. Compl. 18–22; Pl.'s Resp 14. The plaintiff alleges that defendant Caudill failed to: (1) ensure the day-to-day security of the Quilliams Units and the safety of the plaintiff and (2) train or supervise subordinate correctional officers, and/or ensure that a continuous system of contraband prevention and detection was implemented on the Quilliams units. Am. Compl. 20. Additionally, the plaintiff alleges that immediately after he was stabbed, defendant Caudill entered the unit and "stood by as his subordinates failed to take [the plaintiff] to the medical unit, questioned him prior to allowing him access to any medical care, and ultimately threatened him with mace rather than allowing him to obtain timely medical treatment." Pl.'s Resp. 14. The plaintiff further maintains that defendant Caudill "took no corrective action after [the plaintiff] was stabbed, including not even inquiring into the results of the investigation." Pl.'s Resp. 14. The plaintiff also alleges that after he was stabbed, defendant Caudill repeatedly removed the plaintiff from single recreation and denied him alternative access to a telephone. *Id.* at 14–15.

None of these allegations, however, support a claim for supervisory liability. *See Shaw*, 13 F.3d at 799. The plaintiff has failed to allege sufficient facts to prove that defendant Caudill "had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff." *Id.* Additionally, the plaintiff has failed to allege sufficient facts to prove that defendant Caudill was deliberately indifferent. *Id.*

The court **FINDS** that summary judgment is proper as to the plaintiff's supervisory liability claims against defendant Caudill.

### b. Count One: Qualified Immunity

Next, the defendants argue that the plaintiff's Section 1983 claims are barred by the doctrine of qualified immunity. Since the court has already found that summary judgment is warranted as to defendants Rubenstein, Ballard, and Caudill, the court will only address qualified immunity in regard to defendant Matheny.

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citations omitted). "Qualified immunity 'shield[s] [officials] from civil damages

14

liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Tobey v. Trice*, 706 F.3d 379, 385 (4th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [government] conduct." *Henry v. Purnell*, 501 F.3d 374, 377 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court has held that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier*, 533 U.S. at 200–01.

The Fourth Circuit has held that:

> When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff

15

> to defeat a . . . motion for summary judgment on qualified immunity grounds."

*Henry v. Purnell*, 501 F.3d 374, 377 (citations omitted). The plaintiff bears the burden of proof on the first question regarding whether there was a constitutional violation. *Id.* If the plaintiff shows that a genuine issue of material fact exists as to whether the defendants violated his statutory or constitutional rights, then summary judgment is improper. *Denney v. Tucker*, 545 Fed. App'x 211, 215 (4th Cir. 2013). The defendant bears the burden of proof on the second question regarding whether the right was clearly established. *Henry*, 501 F.3d at 378.

Since the plaintiff has met his burden of proving that there is a question of material fact as to whether there was a constitutional violation, summary judgment is improper unless defendant Matheny has proven that the right was not clearly established. Defendant Matheny has failed to satisfy this burden. As explained above, the Supreme Court has explicitly held that prison officials have a duty to protect prisoners from violence at the hands of other prisoners, and that failing to do so may violate the Eighth Amendment. *Farmer*, 511 U.S. at 832; *see also Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

Thus, the court **FINDS** that qualified immunity is improper at this time as to the plaintiff's 42 U.S.C. § 1983 claim against defendant Matheny.

### c. Count Two: West Virginia Constitution

Count Two of the Complaint alleges that the defendants deprived the plaintiff of his rights protected under Article III, Sections 1, 5, and 10 of the West Virginia Constitution. Am. Compl. 24–26. The defendants argue that these claims "should be dismissed because the West Virginia Constitution does not create an independent cause of action for money damages." Defs.' Mem. 12.

While the defendants did not raise this argument, the court finds it necessary to explain that Article III, Sections 1 and 10 are not actually relevant in this case. Article III, Section 1 of the West Virginia Constitution is entitled "Bill of Rights." W. Va. Const. art. III, § 1. It "is a statement of the basic principle on which our entire democratic structure is founded." *Harper v. Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *13 (S.D. W. Va. Sept. 27, 2016) (citations omitted) (quotation marks omitted). This section "does not independently give rise to a cause of action." *Id.* at *14 n.7. Thus, the court **FINDS** that summary judgment is proper as to the plaintiff's claim under Article III, Section 1 of the West Virginia Constitution.

Article III, Section 10 is "West Virginia's equivalent to the federal Due Process Clause." *Id.* at *13. "The Supreme Court has held that 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Spry v. West Virginia*, No. 2:-16-cv-0178, 2017 WL 440733, at *6 (S.D. W. Va. Feb. 1, 2017) (quoting

17

*United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). "The [c]ourt has no reason to believe that the West Virginia courts would apply a different rule in their construction of Article III, [Section] 10 of the West Virginia Constitution." *Id.*

Here, the plaintiff has alleged that he was attacked by another inmate while on recreation because the defendants failed to protect him. This claim is covered by both the Eighth Amendment of the United States Constitution, *Farmer*, 511 U.S. at 833, as well as Article III, Section 5 of the West Virginia Constitution. *Hackl v. Dale*, 171 W. Va. 415, 417 (1982). Thus, the court **FINDS** that summary judgment is proper as to the plaintiff's claims under Article III, Section 10 of the West Virginia Constitution.

Lastly, the plaintiff alleges that the defendants violated his rights secured by Article III, Section 5 of the West Virginia Constitution. For this alleged violation, the plaintiff seeks compensatory damages, outside medical and psychiatric services, punitive damages, and injunctive relief. Am. Compl. 24–26. The defendants argue that this claim "should be dismissed because the West Virginia Constitution does not create an independent cause of action for money damages." Defs.' Mem. 12–13.

The Supreme Court of Appeals of West Virginia has held that the remedies available under the West Virginia Constitution to a plaintiff "brutalized by state agents while in jail or prison" include:

> (a) A reduction in the extent of his confinement or his time of confinement;

(b) Injunctive relief, and subsequent enforcement by contempt proceedings, including but not limited to, prohibiting the use of physical force as punishment, requiring psychological testing of guards, and ordering guards discharged if at a hearing they are proved to have abused inmates;

(c) A federal cause of action authorized by 42 U.S.C. § 1983; and

(d) A civil action in tort.

*Harrah v. Leverette,* 271 S.E.2d 322, 324 (W. Va. 1980). Insofar as the plaintiff seeks monetary damages under the West Virginia Constitution outside the scope of those contemplated by the *Harrah* court, the court **FINDS** that summary judgment is warranted. *McMillion-Tolliver v. Kowalski*, No. 2:13-cv-29533, 2014 WL 1329790, at *2 (S.D. W. Va. Apr. 1, 2014); *Smoot v. Green*, No. 2:13-10148, 2013 WL 5918753, at *5 (S.D. W. Va. Nov. 1, 2013). The defendants did not address the plaintiff's request for injunctive relief, and thus the court declines to address it at this time. Therefore, the court **FINDS** that summary judgment is not warranted as to the plaintiff's request for injunctive relief in Count Two.

### d. Count Three: Negligence

Finally, the plaintiff has brought a negligence claim against each of the defendants. Am. Compl. 26–27. The defendants argue that they are entitled to qualified immunity as to this claim. Defs.' Reply 8. The record is unclear regarding the specific conduct the plaintiff alleges was negligent. Moreover, the defendants briefing on whether they are entitled to qualified immunity as to the plaintiff's

negligence claim was wholly inadequate. The defendants do not cite to *any* case law or a single statute that supports their defense. Def.'s Reply 8. Instead, they state that they are entitled to qualified immunity as to the plaintiff's negligence claim, while only explaining why they are entitled to qualified immunity as to the plaintiff's constitutional claims. *Id.*

The court **FINDS** that material facts exist as to whether the defendants are entitled to qualified immunity as to the plaintiff's negligence claims, and therefore summary judgment as to Count Three is not warranted.

IV. Conclusion

For the reasons stated herein, the defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**. As to Count One, summary judgment is **GRANTED** in favor of defendants Caudill, Rubenstein, and Ballard, but **DENIED** as to defendant Matheny. As to Count Two, the defendants' motion for summary judgment is **GRANTED** as to the plaintiff's request for monetary damages, but is otherwise **DENIED**. As to Count Three, the defendants' request for summary judgment is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 26, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE